IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SHAUNDRELL HUBBARD,　　　　　　　　　　　　　　　　　　　　　　　PLAINTIFF
ADC #170416

v.　　　　　　　　　　　　　4:21CV00932-BSM-JTK

KENTARIOUS TATE, et al.　　　　　　　　　　　　　　　　　　　　　　　DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller.  Any party may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

**I.　　Introduction**

Shaundrell Hubbard ("Plaintiff") currently is incarcerated at the Ouachita River Unit of the Arkansas Division of Correction ("ADC").  Plaintiff's claims arise from the time when Plaintiff was incarcerated in the Pine Bluff Unit.  Plaintiff sued multiple Defendants alleging violations of his constitutional rights.  (Doc. No. 2).  Plaintiff's claims against Defendants Peyton, Walker, Rice, Williams, Shah, and Merrel have been dismissed.  (Doc. Nos. 44, 50).  Only Plaintiff's excessive force claim against Defendant Tate remains pending.

Defendant Tate now has filed a Motion for Summary Judgment on the merits of Plaintiff's claim, Brief in Support, and Statement of Facts.  (Doc. Nos. 54-56, 60-61).  Plaintiff has

responded. (Doc. Nos. 65-67). For the reasons set out below, the Court recommends Defendant Tate's Motion be granted in part and denied in part.

## II.     Plaintiff's Complaint

Plaintiff sued Defendants in their personal and official capacities. (Doc. No. 2 at 1-2). According to Plaintiff, on June 21, 2021, Plaintiff was "struck in the face multiple times with a closed fist by Sgt. K. Tate" while other officers stood by and watched. (Id. at 5). Plaintiff "wasn't resisting or being aggressive. [He] did as [he] was told and [he] still got hit and [Defendant Tate] banged my back in hand restraints." (Id. at 8).

Defendant Tate also allegedly banged Plaintiff's head up against the wall. (Id.). Plaintiff explained he "wasn't resisting or being aggressive [he] did what [he] was told and [he] still got hit and head up again the wall several times." (Id.).

According to Plaintiff, when Plaintiff was taken to 6 Barracks for lock-up, Defendant Tate put Plaintiff in a chokehold while Plaintiff was handcuffed and told Plaintiff that "will break Plaintiff's f*****g neck." (Id.). Plaintiff said he was scared to go into his isolation cell because before this incident Defendant Tate "had already threatened to do something to me." (Doc. No. 2 at 7). Plaintiff seeks damages and injunctive relief. (Id. at 6).

## III.    Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v.

Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."  Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas.  Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

## IV.   Discussion

Plaintiff sued Defendant Tate in his official and personal capacities alleging excessive force.

### A.   Official Capacity Claims

As mentioned above, Plaintiff seeks damages.  Plaintiff's § 1983 damages claim against Defendant Tate in his official capacity is the equivalent of claims against the State of Arkansas and is barred by Eleventh Amendment.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  Accordingly, summary judgment in Defendant Tate's favor on Plaintiff's official capacity damages claim is appropriate.

**B.     Personal Capacity Claims**

Plaintiff alleges Defendant Tate used excessive force against him.  "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  Jackson v. Gutzmer, 866 F.3d 969, 974 (8th Cir. 2017).  The core judicial inquiry in an excessive force claim is whether the force was used in a "good-faith effort to maintain or restore discipline, or was instead used maliciously and sadistically to cause harm."  Flemons v. Devane, 779 Fed. Appx. 423, 425 (8th Cir. 2019) (per curiam) (citing Wilkins v. Gaddy, 559 U.S. 34, 36-39 (2010)).  An officer acts maliciously when he takes a course of action, without just cause or reason, that was intended to injury the inmate.  United States v. Miller, 477 F.3d 644, 647 (8th Cir. 2007) (internal citations omitted).  An officer behaves sadistically if he acts with "extreme or excessive cruelty or by delighting in cruelty."  Id.

In making the inquiry whether an officer acted in good faith to restore or maintain discipline, or if the officer acted maliciously and sadistically to cause harm, courts consider: "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted . . . ."  Jackson, 866 F.3d at 974.  Courts may also consider the threat reasonably perceived by the officer, and "any efforts used to diminish the severity of a forceful response."  Walker v. Bowersox, 526 F.3d 1186, 1188 (8th Cir. 2008).  Pain inflicted during a prison security measure is not cruel and unusual punishment only because in hindsight the degree of force used for security purposes was unreasonable.  Ward v. Smith, 844 F.3d 717, 721 (8th Cir. 2016) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  Rather, guards will be liable only "if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically.'"  Id. (internal citation omitted).  "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in the light of

the particular circumstances." Story v. Norwood, 659 F.3d 680, 686 (8th Cir. 2011) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)).

Even with malicious and sadistic motivation, not every use of physical force rises to the level of a constitutional violation. Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008). "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force . . . .'" Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). But, "any use of force greater than *de minimis*, or any use of force that is 'repugnant to the conscience of mankind' does" constitute a violation. Irving, 519 F.3d at 446. There is no significant injury threshold in an excessive force claim. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). However, "[t]he extent of injury may . . . provide some indication of the amount of force applied." (Id.). Threats of death together with readily available means may "form the basis of an injury sufficiently serious to implicate the Eighth Amendment." Irving, 519 F.3d at 449.

***

On June 16, 2021, Plaintiff was on his bed ("rack") when Defendant Tate and others entered the barracks. (Doc. No. 54-1 at 11:18-12:5). The officers were getting ready to do a shakedown. (Id.). They approached Plaintiff's rack and told him to catch the cuffs. (Id.). Plaintiff's claims span the period of time from when Defendant Tate first tried to handcuff Plaintiff until Defendant Tate escorted Plaintiff to the infirmary and later to Plaintiff's isolation cell. During that period there are four separate times Plaintiff alleges Defendant Tate used excessive force against him: (1) in 9 Barracks at the time of the shakedown; (2) during the walk from the barracks to the infirmary; (3) in the infirmary; and (4) outside Plaintiff's isolation cell in 6 Barracks.

Plaintiff was questioned about the events of June 16, 2021 during his deposition. Plaintiff's deposition testimony is in the record. (Doc. No. 54-1). In support of his Motion, Defendant Tate submitted multiple video files. (Doc. No. 60). The Court has reviewed the video footage. The Court describes each of the four alleged uses of excessive force separately below.

### 1. In 9 Barracks During the Shakedown

On June 16, 2021, at 7:37 p.m., inmates can be seen returning to their beds in 9 Barracks. (Doc. No. 60, video from 6/16/2021 at 19:37). Multiple officers are in the Barracks. (Id. at 19:37:26). Plaintiff is sitting on his rack when officers, including Defendant Tate, approach him. (Id. at 19:37:36). Plaintiff's bed is one of seven lining the back wall of the barracks. The beds are standing perpendicular to the wall, with some space—maybe several feet—between them. The head of the beds touches the wall. Defendant Tate tries to handcuff Plaintiff. (Id. at 19:37:38).

When explaining what happened when Defendant Tate told Plaintiff to catch the cuffs, Plaintiff testified:

> I think [Defendant Tate] got like my left hand in. That's when I felt the cuffs, like, tight on my wrist, so I had kind of moved a little bit, you know. I got pushed onto another inmate's rack and all that all that type of stuff. That's when they just – that's when all that other stuff came about.

(Doc. No. 54-1 at 11:25-12:5).

The video reflects Plaintiff standing with his hands behind his back; then Plaintiff steps away from Defendant Tate and Plaintiff moves his right arm away from Defendant Tate. (Doc. No. 60, video from 6/16/2021 at 19:37:43-19:37:45). Two other officers draw closer, and Plaintiff seeks to pull his right arm away again. (Id. at 19:37:45-19:37:48). Plaintiff continues to struggle and is placed face forward onto another inmate's bed—the bed that is just in front of Plaintiff. (Id. at 19:37:48-19:37:51) (See also Doc. No. 54-2 at ¶ 8).

A use of force incident report by one officer involved provides that Plaintiff refused to put his hands behind him "and continued to hold his hand under him holding on to the bed." (Doc. No. 61, Incident Report of Sgt. Keith Williams, at 2).

During his deposition, Plaintiff was asked if he was being combative when he was on the other inmate's bed. Plaintiff explained: "I mean, I was like on defense made. I'm the one in the cuffs. I'm really trying to protect my face and body or whatever. Like whenever they hit me, I'm trying to protect myself." (Doc. No. 54-1 at 16:21-15).

Because the three officers are standing between the camera and Plaintiff, at this point it is not possible to see what is happening with Plaintiff. (Doc. No. 60, video from 6/16/2021 at 19:37:51). Another officer approaches; there appears to be a struggle. (Id. at 19:37:51-19:38:00). The struggle continues for some time, with yet an additional officer present. (Id. at 19:38:00-19:38:35). Plaintiff appears to continue struggling, and he appears to try to kick the officers. (Id. at 19:38:36). The skirmish goes on until eventually Plaintiff can be seen, in cuffs, crouching and moving at the foot of his bed. (Id. at 19:38:36-19:39:04). Plaintiff appears to continue resisting, but is ultimately brought to a standing position near the head of his bed. (Id. at 19:39:04-19:39:08). As mentioned above, Plaintiff's bed is perpendicular to the wall; the head of the bed touches the wall, and there is limited space between beds.

Plaintiff viewed the video during his deposition. Plaintiff testified that at 19:38:33 is when Defendant Tate struck Plaintiff in the face. (Doc. No. 54-1 at 21:15-18). Plaintiff further testified that:

> When [Defendant Tate] came and put the cuffs on me, he acted like he had something against me. So as we're struggling to do – as they're struggling to get the cuffs on, that's when Tate had hit me a couple of times. I'm trying to put my face on the rack so I can block my face out a little bit. They're trying to get my right hand, put it behind my back and get me in the cuffs. So once I finally let them get that hand and get me in the cuff of whatever, they picked me up and

continued to search my rack. I tried to move out of Tate's way. He pushed me against the wall and stuff. That's when I put he had hit my head against the wall.

(Doc. No. 54-1 at 12:12-23).

Once Plaintiff is standing near the head of his bed, the officers begin searching Plaintiff's rack. (Doc. No. 60, video from 6/16/2021 at 19:39:08-19:39:32). Plaintiff is standing near the wall, with Defendant Tate standing behind him. Plaintiff at one point tries to move away from the head of his bed/the wall and toward the foot of his bed where the officers are searching; Defendant Tate redirects Plaintiff away from the search area, and towards the wall. (Id. at 19:39:30-19:39:32). Plaintiff is still for some time, but then he jumps onto his bed. (Id. at 19:39:32-19:39:59). Plaintiff acknowledges that he climbed on top of his rack, trying to get away from Defendant Tate. (Doc. No. 54-1 at 22:11-22).

Defendant Tate grabs Plaintiff off the bed, swivels left with Plaintiff into the wall, and puts Plaintiff face down onto the bed beside Plaintiff—the same bed Plaintiff was on earlier. (Doc. No. 60, video from 6/16/2021 at 19:39:59-19:40:02). Plaintiff remains on the bed for some time, then again is brought to a standing position. (Id. at 19:40:02-19:40:24). An officer can be seen retrieving something from the floor under Plaintiff's bed. (Id. at 19:40:30-19:40:31). The officer found a phone on the floor when they searched Plaintiff's rack. (Doc. No. 54-1 at 14:8-10; 16:1-2). Plaintiff was then escorted out of the barracks. (Doc. No. 60, video from 6/16/2021 at 19:40:31-19:40:51).

Plaintiff testified that Defendant Tate "slammed [his] face against the wall a couple of times. After they got through looking for what they were looking for, though, I got escorted out of the barracks." (Doc. No. 54-1 at 12:25-13:3).

### 2.     The Hallway

The next alleged incident of excessive force took place in the hallway on the way to the infirmary.  Plaintiff was escorted by Defendant Tate and others to the infirmary.  (Doc. No. 60, video entitled "Hallway Hubbard").  Plaintiff was walking, cuffed, in front of Defendant Tate. (Id. at 07:41:03).  Plaintiff then abruptly swerves to his right and turns to face Defendant Tate. (Id. at 07:41:04).

While watching this video footage during his deposition, Plaintiff was asked what was going on.  Plaintiff explained: "I try and get out of [Defendant Tate's] grasp, like I'm trying to get away from dude."  (Doc. No. 54-1 at 23:18-22).

Defendant Tate then pushes Plaintiff against a nearby wall.  (Doc. No. 60, video entitled "Hallway Hubbard," at 07:41:05).  The next five seconds are a flurry of action.  Defendant Tate redirects Plaintiff to a walking position in front of Defendant Tate, with his hand on Plaintiff's neck to do so.  (Id. at 07:41:05).  Defendant Tate's hand remains on Plaintiff's neck for approximately four seconds.  (Id. at 07:41:05-07:41:09).  Defendant Tate picks Plaintiff up in a bear hug from behind and turns around towards the other officers.  (Id. at 07:41:09-07:41:10). Plaintiff appears to resist while the officers stand around him; one officer can be seen trying to grab Plaintiff's legs.  (Id. at 07:41:10-07:41:13).  Plaintiff continues to resist and the officers eventually carry Plaintiff by the arms and legs down the hall.  (Id. at 07:41:10-07:41:24).

Plaintiff explained as follows what happened when he tried to get away:

> Well, I get kind of tossed around a little bit.  They tossed me around a little bit. They kind of like pick me up.  Somebody grabbed by legs, somebody grabbed like the front of my body, and they just carried me out.

(Doc. No. 54-1 at 23:25-24:3).

### 3. The Infirmary

Plaintiff testified that when he was in the infirmary, Defendant Tate choked him there, too, as well as in isolation in 6 Barracks. (Doc. No. 54-1 at 13:9-11, 21-23; 19:7-14).

Defendant Tate and another officer escorted Plaintiff to infirmary hall #2. (Doc. No. 60, video from 6/16/2021 at 18:45:00). Plaintiff is standing with his back to a wall and window; Plaintiff is in front of Defendant Tate and another officer who is facing him. (Id. at 18:45:38).

Plaintiff testified that at that time he was trying to "get his clothes together, pull [his] pants and stuff up trying to get [himself] situated." (Doc. No. 54-1 at 24:20-21).

Defendant Tate tries to force Plaintiff to sit down in a chair by pushing on Plaintiff's arms with both hands. (Doc. No. 60, video from 6/16/2021, at 18:45:41-18:45:42). According to Plaintiff, he was not moving fast enough for Defendant Tate. (Doc. No. 54-1 at 24:22-25:1).

Defendant Tate declared under penalty of perjury that Plaintiff "refused to sit down and be seen by medical staff." (Doc. No. 54-2 at ¶ 20).

For less than a second in the process, Defendant Tate held his hands around Plaintiff's neck. (Doc. No. 60, video from 6/16/2021, at 18:45:43). Once Plaintiff is sitting, there appears to be some type of verbal disagreement between Defendant Tate and Plaintiff. (Id. at 18:45:43-18:45:45). Defendant Tate then takes Plaintiff by the neck and redirects Plaintiff to a standing position. (Id. at 18:45:46-18:45:48). The maneuver took approximately two seconds. (Id.) Defendant Tate and the other officer then walk Plaintiff out of the hallway. (Id. at 18:45:48-18:46:00). Plaintiff did not know why Defendant Tate picked him up and walked him out of the infirmary hallway. (Doc. No. 54-1 at 25:2-6). When asked if there was "a reason why [Defendant Tate] choked you a little bit or put his hands around your neck," Plaintiff testified: "I really think [Defendant Tate's] got something against me. Because we – I was – this is not his

first time ever locking me up. I got locked up by Tate I think in 2019 at RLW across the street at the other Pine Bluff unit. He locked me up over there for a phone." (Doc. No. 54-1 at 13:24-14:5).

> LPN Angela Garcia witnessed this incident and described it in a witness statement:
>
> On June 16, 2021 at approximately between 7:30-7:45 p.m. Inmate Hubbard . . . was escort[ed] to Infirmary by Sgt. K. Tate and another officer. Inmate Hubbard . . . said "man pull up my pants." Sgt. K Tate told Inmate Hubbard . . . to sit the f**k down. Inmate Hubbard . . . raised up. Sgt. K. Tate pushed Inmate Hubbard . . . back down in the chair telling Inmate Hubbard . . . to sit the f**k down. Sgt. Tate and Inmate Hubbard . . . had words. Sgt. K. Tate put his hand around Inmate Hubbard['s] . . . neck.

(Doc. No. 61, Angela Garcia Witness Statement).

### 4.     6 Barracks – Near Plaintiff's Isolation Cell

After leaving the infirmary hallway, Defendant Tate and two other officers walked Plaintiff to his isolation cell. (Doc. No. 54-1 at 25:7-9). Plaintiff testified that his isolation cell was in 6 Barracks. The video from 6 Barracks shows Plaintiff entering a common area with Defendant Tate and two other guards. (Doc. No. 60, video entitled 6 Barracks, at 07:47:34 p.m.). Plaintiff testified at his deposition that he was not following the guards' orders to go to his cell. (Doc. No. 54-1 at 28:15-24). Instead, Plaintiff acknowledged that he resisted orders and "was walking in the opposite direction from them." (Id. at 28:23-24). Plaintiff further testified that what started the incident was Plaintiff saying he would not go into the cell. (Id. at 29:18-20).

The video reflects Plaintiff walking away from the officers taking him to his isolation cell. (Doc. No. 60, video entitled 6 barracks, at 07:47:34-07:47:36). One of the officers catches up to Plaintiff and grabs Plaintiff's arm. (Id. at 07:47:37). Plaintiff continues trying to walk away from the officer; Defendant Tate approaches. (Id. at 07:47:37-07:47:39). Plaintiff swings around, resisting the officers. (Id. at 07:47:39-07:47:42). Defendant Tate reaches to take

Plaintiff by the arm, but Plaintiff pulls away. (Id. at 07:47:39-07:47:42). Defendant Tate, who was behind Plaintiff, then places an arm and elbow under Plaintiff's neck (the "chokehold") and brings Plaintiff to the floor to a position where Plaintiff is kneeling over a seat near a table in the middle of the room. (Id. at 07:47:42-07:47:46). With the two other guards standing to each side of Plaintiff, Defendant Tate keeps Plaintiff in this position for approximately fourteen seconds until Defendant Tate brings Plaintiff back to his feet. (Doc. No. 60, video entitled 6 barracks, at 07:47:46-07:48:01).

Plaintiff testified that while Defendant Tate had Plaintiff in the chokehold in the middle of the floor, Defendant Tate "told [Plaintiff] he was going to break [Plaintiff's] neck and stuff." (Doc. No. 54-1 at 14:23-25). (See also Doc. No. 2 at 7).

Once Plaintiff is back on his feet and walking in the direction of his cell, Defendant Tate releases Plaintiff from the chokehold. (Doc. No. 60, video entitled 6 barracks, at 07:48:01-07:48:03).

### 5. Plaintiff's Injuries

Some time later, Plaintiff was taken to the infirmary. (Doc. No. 61). When asked during his deposition if he had any injuries to his face, Plaintiff responded: "No, not really. Just like probably a little red mark or something." (Doc. No. 54-1 at 25:19-21). When asked if he "didn't really have any injuries to [his] face, is that correct," Plaintiff responded "No Ma'am." (Id. at 26:9-11). When asked again "You didn't have any injuries to your face at all?" Plaintiff again responded "No Ma'am." (Id. at 26:24-27:1). (See also Id. at 33:5-10) (Plaintiff confirms again no injury to his face, but asserts injury to his wrist from handcuffs being too tight).

As to other injuries, Plaintiff had a slight mark only on his left wrist from the cuffs being too tight. (Id. at 27:14-21). The Condensed Health Services Encounter for Plaintiff's infirmary

visit notes only "visible injuries to Bil wrist and RT wrist abrasion noted." (Doc. No. 61, Condensed Health Services Encounter, at 2). Photos were taken of Plaintiff's face and wrists. (Doc. No. 54-4 at 1-3). A slight mark is visible on one of Plaintiff's wrists. (Id. at 1).

Plaintiff did not identify any effect of or any injury from Defendant Tate's hands on his neck or the chokehold.

### 6. No Facts in Dispute: The Hallway

This was not an instance of Plaintiff's passive resistance or day-to-day policing of a prison though means of violence. See Hickey v. Reeder, 12 F.3d 754, 758-59 (8th Cir. 1993). Here, Plaintiff resisted the efforts of Defendant Tate and other officers, and Plaintiff acknowledged he did so. And beyond being "tossed around," Plaintiff did not identify any harm from the incident.

Considering the facts particular to this case, the Court believes no reasonable juror could find that Defendant Tate acted maliciously and sadistically when escorting Plaintiff in the hallway. Plaintiff does not contest that he was trying to get away from Defendant Tate. Defendant Tate's hand was on Plaintiff's throat for only seconds. And Plaintiff was so noncompliant that he had to be carried down the hallway. Even if there was a violation, the Court is not aware of clearly established law that would put Defendant Tate on notice that his actions were unconstitutional. Under these circumstances, Defendant Tate would be entitled to qualified immunity. Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Saucier v. Katz, 533 U.S. 194, 201 (2001). The Court recommends Defendant Tate's Motion be granted as to this incident.

### 7. Facts in Dispute: 9 Barracks; the Infirmary; and 6 Barracks

Plaintiff states that his face was bruised the day following the incident, and that he had a little red mark on his face. (Doc. No. 67 at ¶ 31; Doc. No. 54-1 at 25:19-21). Plaintiff explained

that because of his skin color, bruising is more difficult to see. (Doc. No. 67 at ¶ 31). Plaintiff also had a mark on his wrist where the handcuffs cut into it. (Doc. No. 54-1 at 26:12-17).

With respect to Defendant Tate's actions in 9 Barracks, the Infirmary, and 6 Barracks, the Court finds there are facts in dispute that should be decided by a jury.

### a.     9 Barracks

Plaintiff alleges Defendant Tate hit him in the face with a closed fist; Defendant Tate denies doing so. (Doc No. 56 at ¶¶ 42, 63; Doc. No. 67 at ¶¶ 42, 63). Plaintiff explained that while he was on the other inmate's bed, he was trying to protect himself from Defendant Tate's blows; Defendant Tate says Plaintiff was resisting the cuffs. A bevy of guards is around Plaintiff blocking the camera's view, so it is not clear from the video exactly what is going on. The descriptions in the incident reports do not resolve questions of fact as to what happened when Plaintiff was on the bed. (Doc. No. 61). Further, it is unclear why rather than restraining Plaintiff in some other way, Defendant Tate turned Plaintiff into the wall after Plaintiff, who was handcuffed by this time, climbed on Plaintiff's bed. The Court also notes Plaintiff testified that be believed Defendant Tate had something against him.

The Court is not in a position to decide what happened while Plaintiff was on the bed or why Defendant Tate turned Plaintiff into the wall; these are issues of fact, and weigh heavily in the determination of whether any force used was excessive. If the Court assumes that Plaintiff's version of the facts is true, as the Court at this stage must, it is possible that a reasonable juror could find that the alleged force used was excessive. Considering the facts in dispute, qualified immunity is inappropriate and Defendant Tate's Motion should be denied as to the alleged excessive force in 9 Barracks.

### b.     The Infirmary

Defendant Tate declared under penalty of perjury that Plaintiff "refused to sit down and be seen by medical staff" when in the infirmary.   (Doc. No. 54-2 at ¶ 20) (See also Doc. No. 56 at ¶¶ 51-52; Doc. No. 67 at ¶¶ 51-52).   In the video, however, it appears that hand-cuffed Plaintiff is sitting when Defendant Tate grabs Plaintiff's throat and lifts Plaintiff to a standing position. Plaintiff and Defendant had exchanged words, but since there is no audio to accompany the video, the Court is not privy to the contents of the conversation.   In a grievance attached to Plaintiff's Complaint, Plaintiff seems to allege that Defendant Tate had "already threatened to do something to [Plaintiff]" before the chokehold in 6 Barracks (discussed separately in the section below). (Doc. No. 2 at 7).   Questions remain as to what that threat was and when it happened.   Again, there are material facts in dispute—whether Plaintiff (who was handcuffed and sitting) was refusing any orders or instructions from Defendant Tate, whether Defendant Tate threatened Plaintiff, and, if so, what that threat was.   See <u>Irving</u>, 519 F.3d at 449.   Qualified immunity is not warranted under these circumstances, and Defendant's Motion in connection with this incident should be denied.

### c.     6 Barracks

In 6 barracks, hand-cuffed Plaintiff admittedly walked away from officers—but a reasonable juror could conclude that Defendant Tate's choke-hold, particularly in light of Plaintiff's testimony that Defendant Tate threatened to break Plaintiff's neck, was malicious.   See <u>Irving</u>, 519 F.3d at 449.   (Doc. No. 56 at ¶ 53; Doc. No. 67 at ¶ 3; Doc. No. 2 at 5, 7).   Based on these facts in dispute, qualified immunity is not appropriate and the Court recommends Defendant Tate's Motion be denied as to the allegations of excessive force taking place in 6 Barracks.

As mentioned above, whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in the light of the particular circumstances." Story, 659 F.3d at 686. The Court notes that regarding 9 Barracks, the Infirmary, and 6 Barracks, Defendant Tate's reactions to Plaintiff's alleged failure to follow orders differed greatly from the behavior of the other officer's present.

## V.     Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Defendant Tate's Motion for Summary Judgment (Doc. No. 54) be GRANTED as to Plaintiff's official capacity damages claims;

2. Defendant Tate's Motion for Summary Judgment (Doc. No. 54) be granted as to Plaintiff's allegations of excessive force taking place in the hallway;

2. Defendant Tate's Motion for Summary Judgment (Doc. No. 54) be DENIED as to all remaining claims.

Dated this 27th day of July, 2022.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE